**410**                        CASES IN THE SUPREME COURT

Washington,
March,
1842.

Judd
v.
Blake & Mc-
Intyre.

---

LEONARD JUDD *v.* BLAKE & McINTYRE.

Where, in an action on book, the auditor, after the hearing, held the case under advisement, and afterwards reported in favor of the plaintiff and gave notice thereof to the attorneys of the parties, and the defendant's attorney informed the defendant that the auditor had reported against him, and the plaintiff, believing that no report had been made, or, if made, was in favor of the defendant, applied to the defendant to settle the suit, and thereupon, without any disclosure from the defendant of his knowledge of the auditor's report, no inquiry being made of him in relation thereto, each party agreed to pay his own costs and the plaintiff released the defendent from all damages and costs,—*it was held* that such release was a bar to the action.

THIS was an action of book account, which was referred to an auditor who reported a balance in favor of the plaintiff. The report was made to the April term of the county court, 1841, at which term the defendants pleaded in bar a settlement of the suit made between the parties since the last continuance. The issue upon this plea was put to the court.

On trial, it appeared that after the hearing by the auditor,

he held the case under consideration for a time, but finally made the report now in the case and published it to the attorneys of the parties in Montpelier, the parties residing in Middlesex. McIntyre was informed by his lawyer of the substance of the report, but Judd not *knowing* that any had been made but hearing a report that either none was made and the auditor had removed westward, or that it was against him, at the suggestion of a neighbor, called on McIntyre to effect a settlement. McIntyre had, or pretended to have, a claim against Judd for injury to colts in bad keeping and for some goods not included in the hearing before the auditor and delivered afterwards. They agreed each to pay his own costs and relinquish all claims, and Judd executed and delivered to McItyre a discharge of the suit and all the costs and damages therein. McIntyre did not inform Judd of the existence of the report and he was ignorant thereof at the time, and McIntyre was not asked whether any was made.

The court rendered judgment for the defendants and the plaintiff excepted to the judgment.

*Heaton & Reed,* for plaintiff.

The bill of exceptions shows that the defendant, McIntyre, with whom the settlement was made, *knew*, and Judd, the plaintiff, did not know, that the report of the auditor had been made, and was in the plaintiff's favor, and McIntyre by withholding this fact, obtained a discharge in full of the suit *paying nothing.*

This concealment and suppression was a fraud upon the plaintiff and makes the discharge void.

I. A false *affirmation* by McIntyre in reference to the existence of the report would have avoided the settlement. This is well settled. 1 Story's Comm. Eq. 201, 202. *Pasley* v. *Freeman,* 3 T. R. 51. *Prentiss* v. *Russ,* 4 Shep. R. 30. *Cochran et al.* v. *Cummings,* 4 Dall. R. 250. *Richards et al.* v. *Hunt,* 6 Vt. R. 253. *Reynolds & Wires* v. *French et al.,* 8 Vt. R. 85. 1 D. Chipman, 49. Comyn on Contracts, 58.

II. This is a case where the *silence* of the party imports as much as a direct affirmation and is equivalent to it. There was a *suppression of the truth.* Judd had a right to suppose that if McIntyre *knew* that the auditor had made his

Washington,
March,
1842.

Judd
v.
Blake & Mc-
Intyre.

report, he would inform him of the fact; and, in Judd's ignorance of it, there were no *laches* on his part, that will relieve McIntyre from the consequences of his actual and fraudulent surprise.

This suppression of a material fact avoids the release. *Hall* v. *Gray*, 1 Stark. R. 434 ; (2 Eng. C. L. R. 459.) *Milnes* v. *Duncan*, 6 Barn. & Cress. 671 ; (13 Eng. C. L. R. 293.) *Martin* v. *Morgan*, 1 Brod. & Bing. 289 ; (5 Eng. C. L. R. 87.) *Smith* v. *Richards*, 13 Peters' R. 36. 1 Story's Comm. Eq. 201, 202. Comyn on Con. 58. Chitty on Con. 529. *Etting* v. *Bank United States*, 11 Wheat. R. 59 ; Cited, 1 Story's Comm. Eq. 222. *Pidcock et al.* v. *Bishop*, 3 Barn, & Cress. 605, (10 Eng. C. L. R. 197.)

*O. H. Smith*, for defendants.

1. It does not appear that McIntyre knew that the plaintiff was ignorant of the fact that a report had been made in his favor. But it does expressly appear no inquiry was made of McIntyre about the report.

2. It does not appear that the receipt given by Judd was without consideration, or that it was inadequate, nor that Judd has ever offered to give up the receipt given him, or in any way to vacate that part of the settlement.

To vacate the contract of settlement the plaintiff should have shown an intentional concealment by McIntyre of a material fact in relation to which Judd had not equal access to the means of information. 2 Kent's Com. 377–380.

The opinion of the court was delivered by

Royce, J.—The only question which the counsel have discussed in this case relates to the validity of the settlement, which took place between the plaintiff and the defendant, McIntyre, at the date of the plaintiffs receipt in full. I shall therefore only inquire whether that settlement ought legally to conclude the plaintiff.

That kind of fraud in dealing, by which one party to a contract is enabled to circumvent and cheat the other, usually consists in the assertion of falsehood, or the suppression of truth. But as McIntyre said nothing in the course of the settlement, respecting the auditor's decision, the case must turn upon the fact that he omitted to disclose his knowledge

upon that subject. The moral law most certainly imposes
the obligation of a mutual and frank communication between parties when contracting with each other. By that code
neither party is at liberty to withhold any material fact, of which he supposes the other to be ignorant. But the common law, as practically expounded and enforced, does not always enjoin so high a rule of moral duty, except in cases where some relation of special trust or confidence subsists between the parties. In this respect it not only falls below the perfect standard of Christianity, but sometimes fails to exemplify the utmost morality of the civil law. It generally supposes that each party will exert that attention to the matter and terms of the contract, and use that diligence in seeking information on the subject, which a natural regard to his own interest might be expected to induce. And by prohibiting whatever would ordinarily cause deception and injury under such circumstances, it professes, as Chancellor Kent remarks, to ' reconcile the claims ·of convenience with the duties of good faith.' I shall not undertake to review the numerous authorities which tend to illustrate these positions, but merely observe, with the same eminent jurist, in his note to 2 Kent's Com. 482, that upon the duty of mutual disclosure they appear to result in the following proposition ;—' that the party in possession of the ' facts must be under some special obligation, by confidence ' reposed, or otherwise, to communicate them truly and fair- ' ly.' Now there is no reason to suppose any such peculiar obligation between these litigant parties, nor did McIntyre avail himself of his information to draw the plaintiff into the settlement. It was sought and proposed by the plaintiff himself. And it seems that he withheld his own suspicions as to the result of the audit, with a view, no doubt, to succeed the better in negotiating for a compromise. The settlement was probably the result of a studious silence on both sides in reference to the audit, each party intending to profit by his silence. And, although the plaintiff acted in ignorance of a fact which was doubtless of some importance, yet, as he took his own time for proposing the settlement, it was an ignorance which can hardly be excused ; nor do we perceive that the defendant, McIntyre, without solicitation or inquiry, was legally bound to dispel it.

Judgment affirmed.